UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CALLOU CORPORATION** | * | CIVIL ACTION |
| | * | |
| versus | * | No. 13-45 |
| | * | |
| **3600 ALVAR, LLC, et al.** | * | SECTION "L" (4) |

## ORDER & REASONS

Before the Court are two motions: (1) Defendant's Motion for Summary Judgment (Rec. Doc. 30) filed by Defendants 3600 Alvar LLC. ("Alvar") and Aggregate & Recycled Material LLC. ("Aggregate"); and (2) Plaintiff's Motion for Summary Judgement (Rec. Doc. 30) filed by Callou Corporation ("Callou"). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

### I. BACKGROUND

This case arises out of the alleged sale of 20,000 tons of processed recycled concrete. According to Plaintiff, on March 19, 2010, Plaintiff entered into an agreement ("the Agreement") with Clifford Smith ("Smith") whereby Plaintiff would loan Smith $20,000. Plaintiff alleges that to secure payment of this loan, Smith granted Plaintiff ownership of 20,000 tons of processed recycled concrete. (Rec. Doc.1 at 3). The relevant portion of the agreement reads "in consideration of Callou writing $20,0000 for deposit on said equipment, Smith transfers immediately to Callou 20,000 tons of processed recycled concrete. Callou will have the choice of Smith's locations from which to take the concrete such as Smith's Almonaster or Alvar yards in New Orleans...." (Rec. Doc. 1-1). In addition to this transaction, Plaintiff claims that on

1

March 23, 2010, Plaintiff and Smith entered into a separate Promissory Note for $9,600. The promissory note states that "[i]n the event this note is not paid by April 1, 2010, then Payee, at his option can take 800 tons of 610 rock at the Almonaster Yard." (Rec. Doc. 1-2). On November 16, 2011, Plaintiff filed a UCC-1 Financing Statement in the office of St. Tammany Parish Recorder. On the financing statement, Plaintiff lists itself as the "creditor" and Smith as the "debtor." (Rec. Doc. 1-3). Plaintiff described the collateral as "20,000 tons of processed recycled concrete." Plaintiff never retrieved the concrete.

On May 10, 2012, Smith filed for Bankruptcy. Defendant Aggregate purchased certain concrete and rock aggregate from trustee of Smith's bankruptcy estate. (Rec. Doc. 1-4). According to Plaintiff, this concrete is currently located on Defendant Alvar's property.

In its complaint, Plaintiff claims that it has both "ownership and a lien on 20,800 tons [of] Rock." (Rec. Doc. 1 at 3). Plaintiff is seeking a declaratory judgment holding that it is the owner of 20,000 tons of rock as well as authority to immediately remove the rock from Defendant's property. (Rec. Doc. 1 at 4).

## II.   PRESENT MOTIONS

On August 20, 2013, Defendants filed a Motion for Summary Judgment (Rec. Doc. 30) asking that the Court find that Plaintiff is not the owner of 20,000 tons of concrete located on Defendants' property. First, Defendants argue that the Agreement granted a security interest in the concrete to Plaintiff, not ownership. (Rec. Doc. 30-1 at 4). Next, Defendants argue that if the Agreement is a contract for sale, rather than a loan, it is invalid for several reasons. First, Defendants claim that there was no agreement on a set price, one of the necessary elements of a sale under Louisiana law. LA. CIV. CODE. art. 2439. Second, Defendants argue that the alleged

purchase price–a $20,000 loan–was disproportionate to the value of the concrete, which Plaintiff alleges to be $520,000.  (Rec. Doc. 5-1).  Lastly, Defendants argue that ownership did not transfer because the concrete was never weighed.  *See* LA. CIV. CODE. art. 2458 ("When things are sold by weight, tale, or measure, ownership is transferred between the parties when the seller, with the buyer's consent, weighs, counts or measures the things.").  Since Plaintiff never weighed the 20,000 tons of concrete, Defendants argue that ownership was never transferred.  (Rec. Doc. 30-1 at 8).

On September 10, 2013, Plaintiff filed its own Motion for Summary Judgment (Rec. Doc. 33) reiterating that it is the owner of 20,000 tons of concrete located on Defendants' property. Plaintiff attached a sworn affidavit of Smith, which states that he agreed "to deliver 20,000 tons of recycled concrete to Callou Corporation, said recycled concrete was held, and owned by Callou Corporation at 3650 Alvar Street, New Orleans, Louisiana."  (Rec. Doc. 33-2).  Plaintiff claims that there exists no genuine issue of material fact as to the ownership of the concrete. (Rec. Doc. 33 at 1).

### III.   LAW AND ANALYSIS

### A.   Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)).  When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784

F.2d 577, 578 (5th Cir. 1986).  "On cross-motions for summary judgment, [a court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."  *Ford Motor Co. v. Tex Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).  The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**B.     The Agreement**

The Louisiana Civil Code explains that when a court is called to interpret a contract, its job is to determine "the common intent of the parties."  *See Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012); LA. CIV. CODE. art. 2045.  "The interpretation of an unambiguous contract is a matter of law..."  *S. Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986).  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  LA. CIV. CODE. art. 2046.  Furthermore, when interpreting a contract, "nontechnical words in a contract must be given their generally prevailing meaning, and each contract provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  *Greeenwood 950, L.L.C.*, 683 F..3d at 669.

"But a contract is ambiguous when, *inter alia*, its 'written terms are susceptible to more than one interpretation,' when 'there is uncertainty as to its provisions,' or when 'the parties' intent cannot be ascertained from the language used.'"  *Greenwood 950, L.L.C.*, 683 F.3d at 668.  In

such a case, extrinsic evidence is admissible. *Id.* "[T]he interpretation of an ambiguous contract through extrinsic evidence of the parties' intent is a matter of fact." *S. Natural Gas Co.*, 781 F.2d at 1081.

### 1. *The Language of the Agreement*

This case turns on the interpretation of the Agreement between Plaintiff and Smith. Plaintiff claims that, by the Agreement, Smith transferred full ownership of 20,000 tons of concrete to the Plaintiff. Defendants, on the other hand, contend that this was a loan agreement and that Plaintiff only received a security interest in the 20,000 tons of concrete.

The Court first looks within "the contract's four corners" to determine the parties' intent. *See Greenwood 950, L.L.C.*, 683 F.3d at 668. The unambiguous language contained in the Agreement indicates that the parties jointly intended for the Agreement to transfer total ownership of the 20,000 tons of concrete to the Plaintiff. The Agreement stated that Plaintiff will assist Smith in financing a piece of equipment. In consideration for a $20,000 "deposit" for said equipment, "Smith transfers immediately to Callou 20,000 tons of processed recycled concrete." (Rec. Doc. 1-1). The Court finds that this language is clear and unambiguous.

Even if the language in the contract were ambiguous, the Court's examination of the extrinsic evidence of the parties' intent leads to the same conclusion. In a sworn affadavit, Smith states that he "signed an agreement to deliver 20,000 tons of recycled concrete to Callou Corporation...Callou Corporation is the owner of 20,000 tons of recycled and processed concrete, which was held at 3650 Alvar Street, New Orleans, Louisiana...." (Rec. Doc. 33-2). In its complaint and Motion for Summary Judgment, Plaintiff Callou states the same intent. Both parties to the Agreement agree that their intent was to transfer full ownership of the 20,000 tons

of concrete.

**C.      Transfer of Ownership**

Having found that the intent of the parties was to transfer ownership to Plaintiff of 20,000 tons of concrete, the Court must now decide whether the transfer was successful.  Defendants argue that if the Agreement did intend to transfer ownership of the concrete, then it was an invalid sale agreement.  Defendants explain that "[i]n the event the Agreement is characterized as a sale agreement, ownership did not transfer because the object of the sale was never weighed by the parties."  (Rec. Doc. 30-1 at 7).  The Court agrees.

Under Louisiana law, a "[s]ale is a contract whereby a person transfers ownership of a thing to another for a price in money.  The thing, the price, and the consent of the parties are requirements for the perfection of a sale."  LA. CIV. CODE. art. 2439.  Generally, "[o]wnership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid."  LA. CIV. CODE. art. 2456.  However, the rule regarding transfer of ownership is different when the thing sold is "sold by weight."  *See* LA. CIV. CODE. 2458.  Instead, "[w]hen things are sold by weight, tale, or measure, ownership is transferred between the parties when the seller, with the buyer's consent, weighs, counts or measures the things."  *Id.*  On the other hand, "[w]hen things, such as goods or produce, are sold in a lump, ownership is transferred between the parties upon their consent, even though the things are not yet weighed, counted or measured."  *Id.*

The Louisiana Supreme Court elaborated on this provision in *Kohler v. Huth Construction Co.*  168 La. 827 (1929).  In that case, the Court determined that the sale of coal had not yet been completed when the barge holding the coal sank.  The Court explained that

"[t]he case here falls squarely under the first article [of art. 2458]. The coal was not sold in a lump at a price for the whole, but the quantity sold was to be determined by weight or measure, and the price was to be $8 per ton...." *Id.* at 829-30.

Admittedly, the present case is distinguishable from *Kohler* because the concrete was sold at a lump price, not a price per ton. However, the Court does not find that this changes the fact that the concrete was sold "by weight" under art. 2458. In *Mobile Machinery & Supply Company v. York Oilfield Salvage Company*, the Louisiana Supreme Court found that a sale of pipe was a "lump" sale and was therefore completed before the weighing of the pipe took place. In reaching this conclusion, the Court explained that "what the defendant intended to buy and what the plaintiff intended to sell was *all* the one-inch pipe in these kilns." 171 So. 872, 873 (1937). Distinguishing this case from *Kohler*, the Court explained that "[t]he sale of the pipe was in lump and no weighing, counting or measuring was contemplated in order to complete the sale or fix the price." *Id.* at 874. The Court emphasized that the "the seller did not know the quantity of pipe in the kilns any better than did the purchaser." *Id.* at 873. This was not a sale "by weight" it was a sale of all of the pipe that the seller in his possession.

In the present case, unlike in *Mobile Machinery*, weighing was necessary to complete the transfer. The Agreement provided for immediate transfer of 20,000 tons of concrete but the Plaintiff was allowed to make up this amount by taking it from any one of Smith's several yards. (Rec. Doc. 1-1). There was no designated pile or specific yard that contained only the 20,000 tons of concrete that was to be transferred to Plaintiff. There was no container, like in *Mobile Machinery*, that contained all of Plaintiff's concrete. Instead, Plaintiff needed to go to the yards, weigh 20,000 tons of concrete, and separate it from the rest of Smith's concrete in order to

determine what belonged to it. Alternatively, Smith could have weighed the concrete, separated it, and delivered it to Plaintiff as was done in the past. (Rec. Doc. 30-10, Request for Admission No. 4) ("Clifford Smith delivered concrete to Plaintiff on numerous occasions.").

The Court finds the explanation provided by Professor Saul Litvinoff in the Louisiana Civil Treatise, The Law of Obligations, particularly instructive. Professor Litvinoff explains that "when the thing on which the parties are contracting is not individualized but is something that must be segregated from a mass of things of the same kind, as in a sale by weigh, tale or measure, the obligation of the seller is one to do until the time the thing of things are individualized." 1 SAUL LITVINOFF, OBLIGATIONS § 1.4 (5 Louisiana Civil Law Treatise, 2d ed. 2008) (citing LA. CIV. CODE. art. 2458). This is exactly the type of transaction that is present here. The Agreement purported to give Plaintiff ownership of 20,000 tons of concrete that had to be weighed and segregated from masses of concrete that Smith owned, located at several different locations. Plaintiff states that "Clifford Smith delivered concrete to Plaintiff on numerous occasions. However, Plaintiff admits Clifford Smith did not deliver the 20,000 tons of concrete that is the subject of the claims made in this litigation." (Rec. Doc. 30-10 at 2). Neither Plaintiff nor Smith weighed the concrete, therefore, ownership never transferred.

Although neither party discusses the possibility that the Agreement represents a transfer of ownership other than a sale, therefore not being bound by the requirements of sale by contract under LA. CIV. CODE. art. 2439, the Court finds it helpful to discuss this option as well. LA. CIV. CODE. art. 518 states that "ownership of a movable is voluntarily transferred by a contract between the owner and the transferee that purports to transfer the ownership of the movable." According to this provision, Smith could have transferred ownership of the concrete without a

8

valid sale contract.  However, the Code goes on to explain that "[u]nless otherwise provided, the transfer of ownership takes place as between the parties by the effect of the agreement and against third persons when the possession of the moveable is delivered to the transferee."  LA. CIV. CODE. art. 2439.  It is undisputed that Plaintiff never took possession of the concrete.  (Rec. Doc. 30-10 at 1, Request for Admission No. 1).  Therefore, ownership could not have been transferred under  LA. CIV. CODE. art. 518.

**IV.    Conclusion**

For the forgoing reasons, IT IS ORDERED that Defendants' Motion for Summary Judgment (Rec. Doc. 30) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment (Rec. Doc. 33) is DENIED.

New Orleans, Louisiana, this 27th day of September, 2013.

_____

UNITED STATES DISTRICT JUDGE